IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **PHILLIP DARIUS CRAYTON,** | ) | Civil Action No. 7:13-cv-00078 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SGT. G. ADAMS, et al.,** | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | United States District Judge |

Phillip Darius Crayton, a Virginia inmate proceeding pro se, instituted this civil action pursuant to the Virginia Tort Claims Act, Virginia Code § 8.01-195, et seq., and construed as arising under 42 U.S.C. § 1983. Defendants, who are staff of the Red Onion State Prison ("ROSP") and the Virginia Department of Corrections ("VDOC"), filed a motion for summary judgment in June 2013. In response to defendants' motion, plaintiff filed three "motions for an injunction order," which the court construes as motions for a preliminary injunction. After reviewing the record, the court finds plaintiff is not entitled to a preliminary injunction.

I.

Plaintiff alleges in the Complaint that on November 19, 2012, defendants Sergeant Adams and Correctional Officers Gibson, Sutherland, and Phipps attacked him in his cell after Officer Bloodgood opened the cell door and that Officers Gibson, Sutherland, and Phipps threw away plaintiff's personal property. Plaintiff further alleges that, after the attack, defendant Lieutenant McCown took plaintiff to the medical department, where he was denied medical treatment; that defendant Captain McCoy ordered plaintiff's transfer out of the medical department and back to his cell; and that defendants Warden Mathena and VDOC Regional Administrator Hinkle lied in their responses to plaintiff's grievances about these events.

In the first motion for an injunction, plaintiff complains that defendants McCoy, Adams, Sutherland, Phipps, Bloodgood, and Gibson and fourteen other specified ROSP staff are "predisposed" to interfering with, and retaliating for, filing administrative grievances and legal pleadings. Plaintiff further complains that ROSP "corr[ectional] security officers in food service" contaminate his food with bodily fluids and body hair. Plaintiff asks the court to "sequester" the named staff.

In the second motion for an injunction, plaintiff again complains about ROSP staff allegedly contaminating plaintiff's food with bodily fluids and body hair. Plaintiff requests an injunction ordering ROSP kitchen staff to personally deliver his meals without security staff interfering. Plaintiff also says he wants to have non-defendant correctional staff "sequestered," to be transferred away from ROSP, and to have his collections of contaminating bodily fluids tested "for ownership of s.t.d.'s."

In the third motion for an injunction, plaintiff asks to be transferred from ROSP to a hospital for mental health treatment due to a litany of complaints. These complaints include how he does not have shoes after his pair were confiscated in June 2013; he has not yet seen a doctor or psychiatrist; he has not been given cleaning supplies to clean his cell; and his documented enemy, Donell Blount, pours feces, urine, and sperm down the ventilation shaft shared with plaintiff's cell. Plaintiff is upset that, despite filing a grievance about Donell Blount's behavior, ROSP staff would not send the "bowel-hazard crew men" to decontaminate the ventilation shaft. Plaintiff also complains that the lack of stimulation in a segregation cell constitutes torture. Plaintiff faults correctional staff at Marion Correctional Center for also putting bodily fluids and hairs in his food when he was housed there, and he believes that every VDOC facility he has visited "all failed mental health screening on intake." Plaintiff further alleges that a non-

defendant counselor spread lies about plaintiff to cause plaintiff to be a target of a prison gang and that ROSP staff do not allow plaintiff to access educational programs despite his "retardation disorder."

## II.

A preliminary injunction is an "extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 689-90 (2008). A movant must establish four elements before a preliminary injunction may issue: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff is not allowed to demonstrate only a "possibility" of irreparable harm because that standard is "inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 23.

A movant must also establish a relationship between the injury claimed in the motion for preliminary injunctive relief and the conduct giving rise to a complaint. Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997). Consequently, an injunction is not available in this action to remedy anything other than the claims described in the Complaint about the alleged attack by defendants on November 19, 2012, the alleged lack of medical care and transfer out of the medical department after the attack, and the administrators' cover up. See In re Microsoft Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003) (stating that without a nexus between the injury alleged in the motion for a preliminary injunction and the conduct described in a complaint, the court should not consider the factors for preliminary injunctive relief).

After weighing the Winter factors and considering plaintiff's allegations about the alleged attack on November 19, 2012, the court finds that plaintiff is not entitled to a preliminary

injunction. Plaintiff fails to show that he is likely to succeed on the merits, and plaintiff's complaints about past events do not demonstrate that he will suffer a future irreparable injury if a preliminary injunction is not issued. Furthermore, the record shows that plaintiff has access to medical services and lives in a secure environment at ROSP.[1]

The balance of equities presently tips in defendants' favor because they are more able than plaintiff or the court to presently decide how to allocate prison resources and where to house plaintiff. Involving a federal court in the day-to-day administration of a prison is a course the judiciary generally disapproves of taking, and the public's interest is better served by not unduly interfering with penal administration. See, e.g., Bell v. Wolfish, 441 U.S. 520, 540 n.23, 548 n.29 (1979) (explaining that maintaining security and order and operating an institution in a manageable fashion are considerations peculiarly within the province and professional expertise of corrections officials). Accordingly, plaintiff is not entitled to a preliminary injunction.

## III.

For the foregoing reasons, plaintiff's motions for a preliminary injunction are denied.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

Entered: July 26, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[1] ROSP is considered an "Administrative Long Term Segregation Unit," meaning that most of its inmates, like plaintiff, are kept in their single-bunk cells for approximately twenty-three hours per day. This type of secure housing is designed for the VDOC's most violent or defiant inmates.