CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 1 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PHILLIP DARIUS CRAYTON,<br>    Plaintiff, | Civil Action No. 7:13-cv-00078 |
| v. | **MEMORANDUM OPINION** |
| SGT. G. ADAMS, et al.,<br>    Defendants. | By:    Hon. Michael F. Urbanski<br>        United States District Judge |

Phillip Darius Crayton, a Virginia inmate proceeding pro se, instituted this civil action pursuant to the Virginia Tort Claims Act, Virginia Code § 8.01-195, et seq., which the court also construed as arising under 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1331 and § 1343. Plaintiff names as Defendants George Hinkle, a Regional Director for the Virginia Department of Corrections ("VDOC"); Randall Mathena, Warden of the Red Onion State Prison ("ROSP"); and ROSP staff Captain T. McCoy, Lieutenant McCowin, Sergeant G. Adams, and Officers Gibson, Sutherland, Phipps, and Bloodgood. Defendants filed a motion for summary judgment, and Plaintiff responded with motions for injunctive relief, a motion to amend, and a motion for discovery.[1]

Having carefully reviewed the record, the court finds Defendants' motion for summary judgment to be well-taken. Plaintiff complains of injuries he sustained when several guards responded to his dimly lit cell in the early morning hours of November 19, 2012. Plaintiff alleges that, in contravention of established security procedures, he was standing, facing the guards, and extending his unrestrained arms when the door opened and the guards entered the cell. The guards responded to this perceived security risk by subduing Plaintiff, during which Plaintiff contends he was injured. Federal courts are poorly equipped to second guess the split

---

[1] The court previously denied Plaintiff's motions for injunctions and motion for discovery. Because Plaintiff is not entitled to any relief and the motion to amend seeks changes only to the demand for relief, the motion to amend is denied as moot.

second security decisions of prison officials. Here, where Plaintiff's own allegations reflect the security risk he posed to the prison guards and the fact that he fought them as he was subdued, there is no genuine issue of material fact to be presented to a jury and his excessive force claim must be dismissed. Because Plaintiff's other claims stemming from this incident also fail as a matter of law, Defendants' motion for summary judgment will be **GRANTED**.

# I.
## A.

Plaintiff alleges in the verified Complaint and his motion for discovery that on November 19, 2012, at 1:30 a.m. at ROSP, Plaintiff told Lt. McCowin that he was feeling suicidal and needed to be in a mental health strip cell. Plaintiff claims that Lt. McCowin left the building, allowing Sgt. Adams and Officers Gibson, Sutherland, and Phipps to make an "unlawful cell entry" into Plaintiff's cell at around 1:43 a.m. Plaintiff acknowledges that, at the time, the light in his cell was not working. Compl., Dkt. # 1, at 2, 5.

Plaintiff alleges that Officer Bloodgood opened Plaintiff's cell door from the control booth and Officer Sutherland entered the cell first, finding Plaintiff standing in front of him with his hands extended. Plaintiff admits that he was not wearing handcuffs. Compl., Dkt. # 1, at 2. Plaintiff also asserts that he was standing, facing the door, and extending his unrestrained arms when Officer Sutherland, who is shorter than Plaintiff, entered the cell. Pl.'s Mot. for Discovery, Dkt. # 22. Plaintiff claims Officer Sutherland punched him in the stomach. Plaintiff then grabbed Officer Sutherland by the neck, and they began to "tussle" on the ground. After they fell to the ground, Sgt. Adams and Officers Gibson and Phipps entered the cell and "jumped on [Plaintiff]," "slam[ed] [his] face down on concrete," and "punch[ed] [him] all over [his] body, kicked [him], stomped [on] [him], hit [him] in [his] groin area and squeezed, [and] call[ed] [him] over and over racial names." Compl., Dkt. # 1, at 2, 5. Plaintiff avers that he had "injuries all

2

over [his] body," id. at 5, as a result of Defendants' violence.

Plaintiff alleges that Defendants applied restraints and moved Plaintiff out of the cell, and that Officers Gibson, Sutherland, and Phipps threw away Plaintiff's personal property, including mail, institutional documents, song lyrics, and photographs. Plaintiff threatened to hurt himself, and Lt. McCowin escorted him to the medical department, where he was placed in a mental health strip cell. Plaintiff alleges that he did not receive a medical assessment or treatment while in the medical department before Capt. McCoy ordered Plaintiff back to his cell. Plaintiff filed grievances about these events, and Warden Mathena and Regional Administrator Hinkle allegedly lied in their grievance responses to cover up staff misconduct.

**B.**

The Defendants' affidavits paint an entirely different picture. In their affidavits, Defendants explain that they used only such force against Plaintiff as was necessary to maintain order and discipline when Plaintiff, in violation of established security procedures, removed part of his shackles and attempted to stand up while his cell door was opening. Specifically, Defendants assert that at approximately 1:53 a.m. on November 19, 2012, Sgt. Adams was informed by staff that the light in Plaintiff's cell was covered so that they could not see in the cell,[2] that Plaintiff had covered his cell door window, and that they could hear Plaintiff beating on something in the cell. Sgt. Adams ordered Plaintiff to allow himself to be handcuffed with Officers Sutherland, Gibson, and Phipps present, so that Plaintiff could be brought out of the cell and the cell could be inspected and searched for contraband. Plaintiff backed up to the tray slot and allowed staff to place handcuffs on his hands and the handcuff strap on the handcuffs.

---

[2] At night, the main lights in the housing units and cells are turned off, and each cell has a small, dim internal light in the ceiling that remains on so that staff can see into the cells during rounds. Sutherland Aff., Dkt. # 17-2, at ¶ 4.

3

Security procedures require the handcuffed inmate to face the back of the cell and kneel on the floor before a cell door is opened. Staff may then enter the cell and fasten leg irons while the inmate is kneeling. Pursuant to these procedures, Plaintiff kneeled down while initially handcuffed, and Sgt. Adams ordered Officer Bloodgood to open Plaintiff's cell door. As the cell door was opening, Plaintiff unclipped the handcuff strap and attempted to stand up, and Sgt. Adams and Officers Sutherland, Gibson, and Phipps entered the cell and grabbed Plaintiff's shoulders, hands, and legs to maintain control of him and to fasten the leg irons. The officers then sat Plaintiff on his bed for a short time before escorting him to the medical department. Plaintiff was transferred to a modified strip cell without personal property, and a Qualified Mental Health Professional subsequently ordered Plaintiff transferred to a strip cell in the medical department due to Plaintiff's threats to harm himself.

Plaintiff's medical record reveals that at 3:20 a.m. on November 19, 2012, a nurse evaluated Plaintiff, noted no injuries, and noted Plaintiff was placed in a strip cell in the medical department. At 5:20 a.m., another nurse checked Plaintiff during rounds and noted that he was standing in his cell while wearing a safety smock but not responding to the nurse. At 7:56 a.m., the nurse again checked Plaintiff during pill pass and did not note any acute distress because Plaintiff stood at his cell door, shook his head "yes" for medication, accepted the medication, and stated, "Nah, I'm good," when asked to have his vital signs measured. At 9:28 a.m., the nurse checked Plaintiff and released him back to his cell, which was still on modified strip cell status per the Qualified Mental Health Professional's order. At about 7:00 a.m. on November 20, 2012, another nurse checked Plaintiff during a sick call and noted that Plaintiff was standing at the door, had scratched the window, refused to talk, and refused to be evaluated during sick call. As of June 20, 2013, Plaintiff had not complained about the alleged injuries he sustained "all over [his] body" from the use of force on November 19, 2012.

4

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are the facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### A.

Plaintiff does not specify whether he is suing Defendants in their individual or official capacities. State officials acting in their official capacities are not "persons" for civil actions seeking damages via 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Therefore, Defendants are immune from suit in this matter insofar as Plaintiff sues Defendants in their official capacities for damages.

**B.**

Plaintiff alleges that Sgt. Adams and Officers Gibson, Sutherland, and Phipps attacked him while speaking racial epithets, and that Officer Bloodgood opened Plaintiff's cell door to facilitate the attack, which the court construes as claims arising from the Eighth Amendment of the United States Constitution. The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" by a prison guard upon an inmate. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The test for determining an Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically and for the very purpose of causing harm." Id. Whether force is applied in good faith or maliciously and sadistically is determined by considering the following factors: the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, efforts to temper the severity of a forceful response, and the extent of any injury suffered by the inmate. Id. at 321. "The extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (quoting Whitley, 475 U.S. at 321).

On this record, no rational trier of fact could find in Plaintiff's favor on his Eighth Amendment claim. Plaintiff alleges that on the night in question, he communicated to Lt. McCowin that he was feeling suicidal. Plaintiff asserts that when officers responded to his cell, which he admits did not have a working cell light, and the cell door was opened, he was "on [his] feet facing the cell door," Pl.'s Mot. for Discovery, Dkt. # 22, in contravention of established security procedures. Thus, crediting Plaintiff's version of the events, the responding officers encountered a suicidal prisoner in a dimly lit cell who was standing and facing the cell door with his unrestrained arms extended when the cell door was opened.

Even if Officer Sutherland did in fact punch Plaintiff's stomach upon entering the cell, as Plaintiff alleges, the circumstances present at the time substantiate the threat perceived by the guards and the need for applying physical force.[3] The incident in question occurred just before 2:00 a.m., when the main lights in the housing units are off. Both Plaintiff and Defendants agree that the light in Plaintiff's cell was not illuminated. Officer Sutherland was presented with an unexpected and intimidating situation once Plaintiff's cell door opened; Plaintiff concedes that he was standing at the opening door with his arms extended. At that moment, Plaintiff's unrestrained arms, extended in any direction, constituted a direct threat to the safety of Officer Sutherland. Even if Officer Sutherland punched Plaintiff once in the stomach as alleged, this action was appropriate under the circumstances to counter the threat Plaintiff posed. See Whitley, 475 U.S. at 320 (noting the appropriate hesitancy to critique in hindsight correctional officers' decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance). Additionally, instead of submitting to Officer Sutherland's use of force, Plaintiff, by his own admission, then grabbed Officer Sutherland by the neck and wrestled him to the ground, causing Sgt. Adams and Officers Gibson and Phipps to use additional physical force to protect Officer Sutherland and restore order.

Furthermore, a medical assessment soon after the incident revealed no injuries, despite Plaintiff's general allegations of unspecified injuries all over his body. Plaintiff never complained of a related injury during the six hours he was confined in the medical department or

---

[3] Nonetheless, a single punch in these circumstances that did not result in any harm constitutes de minimis force that does not violate the Eighth Amendment. See Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks omitted); see also Reyes v. Chinnici, 54 F. App'x 44, 47 (3d Cir. 2002) (holding that a single punch delivered by a correctional officer avoiding being spit on is not the sort of action that is repugnant to the conscience of mankind); Odighizuwa v. Strouth, No. 7:06-cv-00720, 2007 U.S. Dist. LEXIS 49038, at *14, 2007 WL 2007337, at *5 (W.D. Va. July 6, 2007) (Urbanski, Mag. J.) (collecting cases holding that a single punch constitutes de minimis force).

7

after being released back to his cell. The absence of any injury demonstrates that the amount of force used was no more than necessary to secure Plaintiff in shackles and restore order.

Based on Plaintiff's own allegations and the unrefuted medical record, no reasonable trier of fact could find that Sgt. Adams and Officers Gibson, Sutherland, and Phipps used excessive force, or that Officer Bloodgood opened the cell door in order to facilitate a violation of civil rights, in violation of the Eighth Amendment.[4] Accordingly, Sgt. Adams and Officers Gibson, Sutherland, Phipps, and Bloodgood are entitled to summary judgment on this claim.

## C.

Plaintiff alleges that Officers Gibson, Sutherland, and Phipps discarded Plaintiff's personal property after the incident. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation if the state provides an adequate post-deprivation remedy. See, e.g., Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 545 (1981). When the deprivation of property is unauthorized, it would be impracticable for the state to provide a pre-deprivation hearing or other process. Hudson, 468 U.S. at 533. Therefore, an adequate post-deprivation remedy, such as a prison grievance procedure or a state tort claim, suffices. Id. at 533, 536 n.15.

Plaintiff had state law remedies available to him via the inmate grievance procedure and the Virginia Tort Claims Act.[5] See Wadhams v. Procunier, 772 F.2d 75, 77-78 (4th Cir. 1985);

---

[4] Furthermore, racial epithets that may constitute verbal abuse or harassment do not rise to the level of an Eighth Amendment violation. See, e.g., Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim).

[5] Plaintiff cannot proceed in this action with a claim pursuant to the Virginia Tort Claims Act because he did not name a proper defendant and did not provide evidence that he properly notified the Commonwealth of Virginia of

8

Ballance v. Young, 130 F. Supp. 2d 762, 767 (W.D. Va. 2000). Accordingly, inasmuch as Plaintiff had adequate state remedies, the deprivation of his personal property does not constitute a constitutional violation, and Officers Gibson, Sutherland, and Phipps are entitled to summary judgment for this claim.

**D.**

Plaintiff alleges that he told Lt. McCowin before the alleged attack occurred that his cell conditions made him feel suicidal and that Lt. McCowin walked away. Plaintiff also alleges that Lt. McCowin took him to a strip cell in the medical department where he was denied medical treatment. Plaintiff further alleges that Capt. McCoy ordered Plaintiff's transfer from the strip cell in the medical department back to his cell.

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional violation in this context involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious if it involves a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The subjective component is met if a prison official is "deliberately indifferent," meaning the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. To succeed with an unconstitutional medical treatment claim against non-medical prison personnel, Plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with medical treatment, or tacitly authorized or was

---

the tort claim. See, e.g., Va. Code Ann.§ 8.01-195, et seq.; Melanson v. Commonwealth, 261 Va. 178, 182, 539 S.E.2d 433, 435 (2001).

9

deliberately indifferent to a medical provider's misconduct when even a lay person would understand that the provider is being deliberately indifferent. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).

The record demonstrates that Plaintiff received adequate and timely medical attention and treatment. About an hour after the alleged attack on November 19, 2012, a nurse evaluated Plaintiff and placed him in a strip cell in the medical unit per the Qualified Mental Health Professional's instructions. At 5:20 a.m., a nurse checked Plaintiff during rounds. At 7:56 a.m., a nurse again checked Plaintiff, who accepted medication, refused to have his vitals taken, and told the nurse that he was fine. At 9:28 a.m., a nurse checked Plaintiff once more before his release from the strip cell in the medical department to his cell, which also was a modified strip cell. On November 20, 2012, at approximately 7:00 a.m., a nurse checked Plaintiff during sick call, at which time he refused to talk or to be seen. Because Plaintiff received adequate medical attention and treatment and fails to show any Defendant's deliberate indifference to a serious medical need, Lt. McCowin and Capt. McCoy are entitled to summary judgment for these claims. See, e.g., Miltier, 896 F.2d at 854.

E.

Plaintiff alleges that Warden Mathena's and Regional Director Hinkle's responses to Plaintiff's grievances about the alleged attack and deficient medical care were lies to cover up staff misconduct. A superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability. See, e.g., Boger v. Johnson, No. 7:10-cv-00194, 2010 U.S. Dist. LEXIS 132679, at *26, 2010 WL 5174364, at *8 (W.D. Va. Dec. 15, 2010) (Wilson, J.) (citing Brooks v. Beard, 167 F. App'x 923, 925 (3rd Cir. 2006) (finding that allegations that prison officials and administrators responded inappropriately to inmate's subsequent grievances do not establish the

10

involvement of those officials and administrators in the alleged underlying deprivation)), aff'd, 438 F. App'x 167 (4th Cir. 2011). Plaintiff cannot proceed against Warden Mathena under a theory of respondeat superior, and Plaintiff fails to establish personal fault on the part of Warden Mathena or Regional Director Hinkle based on their personal conduct or another's conduct in execution of their policies or customs. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Accordingly, Mathena and Hinkle are entitled to summary judgment.

### III.

For the foregoing reasons, the court grants Defendants' motion for summary judgment for all federal question claims actionable via 42 U.S.C. § 1983 and declines to exercise supplemental jurisdiction over any state law claim, pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's motion to amend the relief sought and motion for an extension of time to file an immediate injunction are denied as moot.[6]

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to Plaintiff and counsel of record for Defendants.

ENTER: This 31st day of October, 2013.

/s/ Michael F. Urbanski

United States District Judge

---

[6] The court will not construe the motion for an extension of time to file an injunction as a motion to amend because the amendment, which discusses events unrelated to this action involving non-defendants at two different prisons, would be futile. See, e.g., Fed. R. Civ. P. 15, 20; Foman v. Davis, 371 U.S. 178, 182 (1962) (recognizing futile amendments should be denied); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001) (recognizing permissive joinder is not proper when new claims unrelated to a complaint are proposed against new defendants).

11